(C. D. 558)

Fallani & Cohn, Inc. v. United States

## United States Customs Court, Second Division

(Decided November 28, 1941)

*Lane & Wallace* (*William H. Fox* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Tilson, Kincheloe, and Dallinger, Judges

Tilson, Judge: The plaintiff filed this suit seeking to recover from the defendant a certain sum of money alleged to have been illegally exacted as customs duties on a certain importation of napkins. Duty was levied thereon at the rate of 90 per centum ad valorem under paragraph 1529 (a) of the act of 1930, presumably upon the theory that the merchandise consisted of "Flax Arts Embd by hand." The quoted words appear in red ink on the invoice and are the only indication of any kind of any classification by any one. Presumably the above notation was made by the examiner and there is no indication in the official record that the collector accepted or adopted the same as his classification.

The plaintiff claims the merchandise to be properly dutiable at only 30 per centum ad valorem under paragraph 1014 of the act of 1930 and the trade agreement with the United Kingdom, T. D. 49753, as napkins finished or unfinished, wholly or in chief value of flax, not exceeding 120 threads to the square inch, counting the warp and filling.

At the trial of the case counsel for the plaintiff limited the claim to the napkins, abandoning as to the other items covered by the protest. Counsel for the respective parties also agreed at the trial that the napkins are composed wholly of flax, and that they contain less than 120 threads to the square inch, counting the warp and filling.

As heretofore stated there is nothing in the record to indicate the classification made by the collector, other than the red-ink notations on the invoice "Flax Arts Embd by hand." Underneath the above notation appear other figures, letters or characters of some kind which we are not able to decipher and therefore can give no consideration to the same. The aforesaid red-ink notations must be accepted by us as the advisory classification of the appraiser, and in view of the fact that the appraiser's advisory classification of the merchandise at 90 per centum ad valorem under paragraph 1529, *supra*, describes it as "Flax Arts Embd by hand," and as there is no evidence to the contrary "the record is sufficient to establish the fact that the merchandise was classified" by the collector in accordance with the appraiser's advisory classification. *United States* v. *Bullocks*, 24 C. C. P. A. 41, 25 C. C. P. A. 381.

The collector having classified the merchandise as being "Flax Arts Embd by hand," it was incumbent upon the importer to overcome the presumed correctness of such classification. This burden the importer promptly met by introducing in evidence a sample of the imported merchandise, from an examination of which we find without hesitation that it is not embroidered in any manner. It should be stated, however, that no contention was made by anyone before this court that the merchandise was embroidered in any manner, but the case was tried upon the theory and contention on the part of the defendant that the merchandise was "articles from which threads have been drawn and with threads introduced after weaving to ornament the openwork, except such articles having one row of straight hemstitching adjoining the hem."

In the *Bullocks* case, 25 C. C. P. A. 381, the appellate court stated:

* * * Accordingly, the principles of law announced in the quoted excerpt from our decision in the case of *United States* v. *White Sulphur Springs Co., supra,* have no application to the issues in the case at bar.

In view of the fact that the situation in the present case is exactly the reverse of the situation in the *Bullocks* case, *supra*, it would appear that the above-quoted statement from the *Bullocks* case is not applicable here, and that the following quotation from the *White Sulphur Springs* case, 21 C. C. P. A. 203, is applicable:

Where a paragraph of a tariff act makes provision for two or more distinctly different kinds of merchandise and the collector of customs specifically classifies an importation as one of those kinds, the legal presumption that such classification is correct attaches, but *such presumption of correctness is limited to the specific classification made, and, in case it be found that the merchandise is not such specific kind, it may not be held that there is a legal presumption that it is some other kind which happens to be included in the same paragraph but of which the appraiser gives no description and the collector makes no mention in his classification.* [Italics ours.]

Paragraph 1529 makes provision for two or more distinctly different kinds of merchandise. The collector specifically classified the instant merchandise as one of those kinds, to wit: "Flax Arts Embd by hand" and the legal presumption that such classification was correct attached. However, such presumption of correctness is limited to the specific classification of the merchandise as "Flax Arts Embd by hand," and when it is found that the merchandise is not such specific kind, it may not be held that there is a legal presumption that it is "articles from which threads have been drawn and with threads introduced after weaving to ornament the openwork, except such articles having one row of straight hemstitching adjoining the hem," included in the same paragraph but of which the appraiser gives no description and the collector makes no mention in his classification.

Therefore, when the plaintiff entered upon the trial of this case, he was not charged with the onus of overcoming a legal presumption that the merchandise was articles from which threads have been

drawn and with threads introduced after weaving to ornament the openwork, except such articles having one row of straight hemstitching adjoining the hem. The only legal presumption the plaintiff had to overcome was that the merchandise was "Flax Arts Embd by hand." On the facts in this case, this holding is in complete harmony with and demanded by the decisions in the *Bullocks* cases, *supra,* and the *White Sulphur* case, *supra.*

The theory upon which this case was tried and submitted involves the following provision in paragraph 1529 (a) of the act of 1930:

\* \* \* fabrics and articles \* \* \* from which threads have been omitted, drawn, punched, or cut, and with threads introduced after weaving to finish or ornament the openwork, not including one row of straight hemstitching adjoining the hem; \* \* \*

The hemstitching on the napkins is what is known as "Gigliuccio." During the trial of the case counsel for the defendant admitted that this hemstitching "is plain or straight hemstitching." Counsel for the defendant, in his brief filed herein, makes a further concession, as follows:

\* \* \* It is conceded that if the merchandise was not properly classified by the collector under paragraph 1529 (a), it should be dutiable as claimed by the importer. \* \* \*

Counsel for the plaintiff contends that the hemstitching on the napkins constitutes only one row of straight hemstitching adjoining the hem, while counsel for the defendant contends that it constitutes more than one row of such hemstitching, and this is the question presented for determination in this case.

Counsel for the plaintiff offered in evidence herein the record in *United States* v. *Macksoud,* 27 C. C. P. A. 218. At the time this record was offered counsel for the defendant objected to its admission unless and until two of the witnesses who testified in that case were produced for further cross-examination. However, at a later hearing counsel for the defendant withdrew his demand for the production of these witnesses, but the motion to incorporate was never renewed nor in any way brought to the court's attention, and the case was submitted without the record in the *Macksoud* case, *supra,* being admitted in evidence in this case. It is evident that said record was offered in evidence in this case for the sole purpose of showing that the hemstitching on the napkins herein, whether consisting of one, two, or three rows, was straight hemstitching. The record shows that the hemstitching in the *Macksoud* case, *supra,* which was held to be straight hemstitching, is identical with the hemstitching on the napkins in this case. However, since counsel for the defendant conceded that the hemstitching on the napkins in this case, whether one, two or three rows, is straight or plain hemstitching, the record in the *Macksoud* case, *supra,* is not necessary to establish that point.

The hemstitching on the napkins in this case is known as "gigliuccio," and according to the record that word comes from the word lily. The Italian "giglio" means lily. This particular hemstitching being known as "lily," after the word "giglio." It further appears from the record that this particular kind of hemstitching has been produced, known and used for a long number of years, and has always been made or produced in the same manner, and that all of the work and the manner of its production appearing on the napkins in this case was necessary to produce such hemstitching, or "gigliuccio."

In the production of gigliuccio, or hemstitching like that on the napkins in this case, the worker withdraws from the material selected two threads, then skips four threads and withdraws five threads, then skips four threads and withdraws two threads. Thereafter the worker, by means of a needle and thread, gathers the loose threads into clusters. The number of threads withdrawn and the number of threads skipped may vary according to the fineness or coarseness of the threads in the material thus being operated upon. For instance, if the material is made of very coarse threads, the operator would first withdraw only one thread, then skip two or three and withdraw two or three, then skip two or three and withdraw one. As a rule the finer the threads in the material the more there would be withdrawn and the more then would be skipped.

Counsel for the defendant contends that by covering up all the openwork on these napkins save the space created by withdrawing the first set of threads, that that space and the needlework performed thereupon constitutes one row of hemstitching, and likewise with the space created by the withdrawal of the second and third set of threads, thus creating three rows of hemstitching upon these napkins. This argument is not very convincing, nor is the testimony which was offered in support of this contention.

It is a well-settled rule that merchandise must be classified for duty purposes in the condition in which it is imported into the United States. If a silk dress were imported with embroidery around the collar, and the collector covered up the collar, he would classify it under paragraph 1210, but if he classified it in the condition in which imported, he would place it under paragraph 1529, as embroidered articles. If a shoe were imported and entirely covered up except for the sole, that would take one classification, if it were entirely covered up except for the upper, then it would take another classification, and if it were entirely covered except for the eyelets, then it would take an entirely different classification. The only way to classify merchandise is in the condition in which imported, and as imported the napkins in this case did not have covered up any part of the hemstitching that appears thereon.

Illustrative exhibit M was introduced by counsel for the defendant and his own witness testified that it is "four rows of hemstitching." To use the argument of counsel for the defendant we would cover up the three rows of hemstitching the farthest from the hem and we would have an article with one row of hemstitching adjoining the hem. Such a procedure would clearly be erroneous, and likewise is the contention of counsel for the defendant erroneous. In considering this case, we cannot lose sight of the fact that the collector classified the instant merchandise as embroidered articles, or to be specific, as "Flax Arts Embd by hand."

Defendant's illustrative exhibits L and N are other examples of articles having more than one row of hemstitching. Illustrative exhibit L contains samples of articles having one, two, three, and four rows of hemstitching thereon. If the defendant's illustrative exhibits L, M, and N are articles having two, three, and four rows of hemstitching thereon, as testified to by defendant's own witnesses, then by the same reasoning it should be held that exhibit 1, the instant merchandise, has only one row of hemstitching thereon.

Plaintiff's illustrative exhibit P appears to be a fair representation of what constitutes two rows of hemstitching, or two rows of "gigliuccio," and is more in line with defendant's illustrative exhibits L, M, and N than is exhibit 1. Illustrative exhibit P has one row of "gigliuccio" adjoining the hem and approximately 1 inch therefrom appears another row of the identical hemstitching. Defendant's illustrative exhibit M has one row of hemstitching adjoining the hem, approximately ¼ inch therefrom appears another row of identical hemstitching, approximately ¼ inch therefrom appears another row of identical hemstitching, and approximately ¼ inch therefrom appears a fourth row of identical hemstitching. The defendant's witnesses testified that this constituted four rows of hemstitching. Each of these rows of hemstitching is finished as a separate entity and no one row has any connection with any other row. The threads introduced to complete one row of this hemstitching might be removed and the other three rows would remain intact. This is not true with the row of hemstitching on exhibit 1. If one thread introduced to complete the "gigliuccio" on exhibit 1 were removed the entire pattern and row of hemstitching is destroyed.

It is not our view that the number of rows of hemstitching that is produced upon a given material is dependent upon the number of sets of threads that are withdrawn. Two or three sets of threads may be withdrawn from one piece of material and the threads introduced to complete the hemstitching so arranged that there will be produced only one row of hemstitching, while two or three sets of threads may be withdrawn from a piece of material and the threads introduced to complete the hemstitching so arranged that there will be produced two or three rows of hemstitching.

The testimony in this case is to the effect that in the production of "gigliuccio," the hemstitching on the instant merchandise, three sets of threads must be withdrawn and the threads introduced to finish or complete the hemstitching, or "gigliuccio," must be so arranged as to gather the loose threads into one row as an entirety, and any removal of the thread so introduced would destroy the entire pattern of "gigliuccio." Not so with the removal of any part of the thread so introduced in any of the two, three, or four rows of hemstitching in illustrative exhibits L, M, and N.

Counsel for the defendant, in his brief filed herein, quotes from the testimony in the case of *Macksoud, supra,* in support of his contention that the napkins in this case have three rows of hemstitching. This is apparently based on the assumption that the record in *Macksoud, supra,* was admitted in evidence in this case. As heretofore stated, the *Macksoud* record was not admitted in evidence in this case, and of course, we are not at liberty to consider the testimony taken in that case.

Counsel for the defendant quotes from the decision of the appellate court in *United States* v. *Macksoud,* 27 C. C. P. A. 218, wherein the court stated that the merchandise therein had three rows of hemstitched openwork. It should be stated, however, that the *Macksoud* case, *supra,* arose under the act of 1922 and under that act no question could arise as to the number of rows of hemstitching appearing on any given article. Therefore, anything the appellate court might have said in that case regarding the number of rows of hemstitching would not be binding in this case.

The crux of this entire case appears to us to be stated by counsel for the defendant in his brief filed herein, as follows:

* * * While it might be true that taken as a whole the openwork might be known as Gigliuccio hemstitching, and while taken as a whole it might be merely one row of Gigliuccio, nevertheless, it is firmly established in the record at bar that in producing one row of Gigliuccio it is necessary to produce three rows of hemstitching.

In determining the question here presented we must deal with the hemstitching "as a whole" and when so dealt with the evidence establishes that although in the production of the hemstitching three separate sets of threads are withdrawn and afterwards grouped together, the only known method of producing gigliuccio hemstitching requires that the work be so done as to produce only one row of hemstitching, or gigliuccio. While it might be stated that all of the defendant's witnesses and some of plaintiff's witnesses testified that in the production of gigliuccio three separate rows of threads were withdrawn and thereafter filled in with an independent thread, and that if these three rows of filled-in openwork had appeared separately, or if each row of openwork had been filled in as a separate and independent entity, there would have been three rows of hem-

stitching, but the testimony of all the witnesses shows that this procedure was not followed in producing the hemstitching before us.

In the production of many articles the original material has to be manufactured or processed through two or more stages, but this does not militate against the article being dutiable in the condition in which imported, or even suggest that the imported article should be dutiable as it appeared in one or more stages of manufacture through which it passed. The ultimate article produced in the instant case is a napkin upon which appears one row of gigliuccio, and in that condition it was imported. Just what would have been the proper classification of the napkins had the gigliuccio not been completed, we are not here concerned with. It. is definitely established that gigliuccio consists of one row of hemstitching, and on the napkins imported there appears only one row of gigliuccio.

On the record presented, and for the reasons stated, we hold the napkins, items 15/626A, on the invoice covered by this suit to be properly dutiable at only 30 per centum ad valorem under paragraph 1014 of the act of 1930 and T. D. 49753, as claimed by the plaintiff.

To the extent indicated the specified claim in this suit is sustained; in all other respects and as to all other merchandise all the claims are overruled. Judgment will be rendered accordingly.